JOHN E. McCOLLIN, Appellant, v. JAMES BLACK MASONRY AND CONSTRUCTION COMPANY.

Division One, December 24, 1912.

NEGLIGENCE: Pleading: Evidence: Order by Foreman. The plaintiff, employed under defendant's foreman in reconstructing a building, was working from a scaffold below the second floor, one end of which was supported by a rope which ran up through a girder above and was then wrapped around a wooden floorbeam and tied to a wire cable which held the wooden beam in place. Two other workmen raised a column from the first to the second floor and put it in place with the aid of blocks and tackles and hand lines. When they had finished, and stood, with the foreman, upon the second floor, the foreman ordered them to "bring down all the rigging there is up here." In about ten minutes the rope dropped which held the end of plaintiff's scaffold, and he was injured. Plaintiff's petition alleges that he was injured as a result of the negligence of the foreman in making said order. *Held*, that the evidence does not support such allegation, the foreman's order not including the untying of the rope which held plaintiff's scaffold.

Appeal from St. Louis City Circuit Court.—*Hon. Charles C. Allen*, Judge.

AFFIRMED.

*Henry A. Baker, Frank E. Richey* and *Campbell Allison* for appellant.

*Jones, Jones, Hocker & Davis* for respondent.

BROWN, C.—The petition states that the defendant is a Missouri corporation engaged in the general contracting business, and that one Anton Pape was its foreman; that the plaintiff is a bridge and structural iron worker, and was on December 19, 1905, employed by defendant in that capacity in erecting a building in St. Louis under the direction of said Pape

as foreman. The petition then proceeds as follows: "That while plaintiff was at work as aforesaid, on said day, he, in obedience to the order of said foreman, was on a plank scaffold, suspended below the second floor of said building, one end of which plank scaffold was resting on and supported by an X brace, and the other end was resting on and suspended by a rope, which rope was passed through a girder above the said plank scaffold and was wound three times around a floor beam or girder of the second floor, and then securely tied by two "half hitches" to a wire cable just above the said second floor; that while plaintiff was thus on said plank scaffold and at work as aforesaid, without any knowledge, fault or negligence on plaintiff's part, said foreman, Anton Pape, although he well knew, or by the exercise of ordinary care might have known, that plaintiff was at work on said scaffold, as aforesaid, carelessly and negligently ordered and directed two of the employees of the defendant then at work on the said building under the direction of the said Pape, to take up the rigging (which rigging included the said rope supporting the plank scaffold on which the plaintiff sat as aforesaid), thereby ordering and directing the said workmen to take up and remove the said rope supporting the plank scaffold on which the plaintiff sat, as aforesaid. and that the said workmen, in obedience to the said order and direction, and in execution thereof, untied the said rope tied to the wire cable as aforesaid, and uncoiled the same, or permitted it to uncoil, from around the said girder, whereby the end of said scaffold which was being supported by said rope, as aforesaid, suddenly and without warning of any kind to plaintiff, was permitted and caused to drop, in consequence of which said negligence, plaintiff fell to the floor below." He then proceeds to describe his injuries, and asks $10,000 for damages.

The answer contains a general denial.

The plaintiff proved that at the time of the accident he was engaged with others under the direction of Mr. Pape, in the work of reconstructing a building in St. Louis by substituting a heavy steel girder, three feet in depth, to support the second floor, in place of a wooden floor beam in use for that purpose, so that all supports might be removed and the entire room left in the clear. The supports had already been removed from beneath the wooden beam and it was supported at the end near the place where the accident occurred by a wire cable wrapped around it, extending up through the second floor and fastened at the next floor. The steel girder consisted of two members placed side by side separated by pieces of metal between them, called separators. These had already been placed in position, supported in some manner not clearly described, underneath and parallel to the wooden beam, and were ready to have the separators inserted, and be bolted together. This was to be done by the plaintiff and Mr. Connelly, members of the force at work on the building under the direction of Mr. Pape, who told them to construct a scaffold from which to do the work. Mr. McCollin got a yellow pine plank about two inches thick, ten inches wide and sixteen to eighteen feet long, and laid it on the floor directly under and parallel to the girder, while Connelly went up to the second floor with a rope, which he passed through the space between the members of the girder. Mr. McCollin then took it and tied it securely to the north end of his plank, placed the south end in an X brace about three feet below the bottom of the girder, and then swung up the other end by the rope so as to level it. Mr. Connelly then wrapped his end of the rope three times around the wooden beam at a point near the wire cable that supported it from the floor above, and then made two half hitches around the cable, fastening it securely. Mr. McCollin then sat upon the scaffold, the bottom of the gir-

der just clearing his head, to put in and tighten the bolts in the lower half of the girder while Mr. Connelly did the same work on the other half from above. They completed the scaffold and got to work at about three o'clock in the afternoon, stopping for the evening about half past four. They went to work the next morning at eight o'clock, and about a quarter before ten, while Mr. McCollin was pulling the wrench to tighten a bolt the scaffold went from under him and he fell, his foot going through a hole in the floor and fracturing his leg badly above the ankle. His first look was at the scaffold. The scaffold knot still held around the plank and the knot consisting of half hitches around the wire cable was·untied, the turns taken off the beam, and the weight of the rope over the steel girder held it suspended about a foot from the floor. The evidence tended strongly to show that the rope was well fastened and would not have become untied without manual interference; that two men named Jones and McVey were working on the second floor; that between nine and ten o'clock the morning of the accident they raised a column from the first to the second floor and put it in place. Mr. Pape then ordered them "to take down all the rigging that was up there and to go down on the first floor." The rigging consisted of ropes and blocks and chains. There were several pieces of coils, and one rope was rigged up in a set of falls and tackle blocks directly over the place where the rope which supported the scaffold was tied. There were also some lashings or short pieces of rope used to tie on to anything to hook the falls into, and other pieces of rope that were used as hand lines. Mr. Jones, who testified, saw the rope that was tied to the cable that supported the wooden girder with two half hitches. The plaintiff asked questions calculated to elicit testimony that the rope supporting the scaffold was "rigging" within the mean-

ing of this order, which was excluded by the court and exceptions taken by the plaintiff. When the order was given Mr. Pape, Mr. Jones and Mr. McVey were all standing on the second floor, both Mr. McVey and Mr. Jones being near the rope that supported the scaffold. This was five or ten minutes before the accident. Mr. Jones, upon his cross-examination, testified that he did not untie this rope. He was not asked, either on direct or cross-examination, whether he saw Mr. McVey untie it, and Mr. McVey was not introduced by either party.

At the close of plaintiff's evidence the court, at the request of defendant, instructed the jury to find for the defendant, and the correctness of this ruling constitutes the only question here for review. It will be observed that the only negligence charged in the petition is that of Mr. Pape, the foreman, in giving the order "to take up the rigging." One thing is therefore evident: that unless the order given by Mr. Pape constituted negligence, the court was right in holding that there could be no recovery. The order as proved was in the following words: "Bring down all the rigging that there is up here and come down on the first floor."

Like most language this expression is to be construed with respect to the circumstances in which it was used. The man to whom it was addressed had just been raising a column from the first floor to the second. The fall, or movable pulley of the tackle, with its hook, hung above the same knot that became untied. This tackle, with the lashings by which it was fastened to its support or took hold upon its load, and the hand lines with which the column had been steadied and swayed to its place when the time came to set it down, were all there, and constituted the rigging used by the men who did the work. Having accomplished their task nothing is more natural than that they should have been directed to remove it to some

other place for use or storage. The word rigging is a common English one, and when applied to the handling of heavy loads, whether of timber, metal or stone or other similar material, means the tackle, lines and fastenings with which the task is accomplished, without regard to the material, whether metal or vegetable, from which they are fabricated. In this case it would be an absurdity to hold that it referred to the ropes in use to support the building or structures in use at the time. Had the men to whom the order was given proceeded to unfasten the wire rope, which supported the wooden floor beam so as to let the second floor down into the room below it would not have shown a more fundamental misconception of a plain order than did the unfastening of the rope which was tied to it and supported the scaffold in use below.

Although in our opinion the evidence tends strongly to show that the rope supporting the scaffold was untied and cast off by the workmen on the second floor of the building, there is no evidence of negligence of the foreman in giving the order in evidence. It follows that the judgment of the trial court must be affirmed and it is so ordered.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.